IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>v.<br><br>LAMONT ALFONZO WARD, JR.,<br><br>            Defendant. | Case Nos. 13-cr-40066-01-DDC,<br>                  14-cr-40139-01-DDC |

**MEMORANDUM AND ORDER**

This matter comes before the Court on two motions filed in separate iterations of the same case. This prosecution involves two cases because government moved to dismiss the indictment in Case No. 13-40066 (the "First Indictment"), and the Court dismissed it without prejudice (Docs. 41, 43). The government then refiled an identical indictment to initiate Case No. 14-40139 (the "Second Indictment") (Doc. 1). Defendant Lamont Ward, Jr. has filed two Motions to Dismiss Indictment, one in each case. The first is a pro se motion seeking dismissal of the First Indictment with prejudice (Doc. 44 in Case No. 13-40066). Mr. Ward's second motion was drafted by counsel and seeks dismissal of the Second Indictment based on similar arguments (Doc. 12 in Case No. 14-40139). The Court consolidated the motions for briefing (Doc. 20 in Case No. 14-40139; Doc. 47 in Case No. 13-40066). The government filed a response (Doc. 23 in Case No. 14-40139; Doc. 48 in Case No. 13-40066), and the Court held a hearing on the motions on December 17, 2014.

In his motions, Mr. Ward argues that the government violated three provisions of the Interstate Agreement on Detainers Act ("IAD") and, therefore, the Court must dismiss the First Indictment with prejudice (and, as a result, also dismiss the Second Indictment). For the reasons

1

explained below, the Court concludes that Mr. Ward has established an IAD violation, but it must hold a hearing to determine the appropriate remedy for the violation before it can finally rule Mr. Ward's motions.

### A.  Procedural History and Factual Background

The government has indicted Mr. Ward for the same offenses—possession of cocaine with intent to distribute, felon in possession of a firearm, and possession of a firearm in furtherance of drug trafficking—in two separate cases.  Doc. 1 in Case No. 14-40139; Doc. 3 in Case No. 13-40066.  The government filed the First Indictment on May 29, 2013.  Doc. 1 in Case No. 14-40139.  When Mr. Ward allegedly committed the charged offenses, he was serving a term of probation for an aggravated battery conviction in Geary County, Kansas.  The Geary County court found Mr. Ward violated the terms of his probation when he engaged in the conduct producing his federal charges.  He returned to Kansas Department of Corrections ("KDOC") custody on October 31, 2013.  The government lodged a detainer with KDOC on December 10, 2013.[1]

The government requested custody of Mr. Ward through a Writ of Habeas Corpus *ad prosequendum* filed on February 18, 2014.[2]  Docs. 4, 7 in Case No. 04-40139.  The United States

---

[1] A "detainer" is a written request that a separate prosecuting authority (the "receiving state") files with a correctional or detention facility in another jurisdiction (the "sending state") that currently has custody of an inmate the receiving state wishes to prosecute.  *Pitsonbarger v. Gramley*, 103 F.3d 1293, 1300 (7th Cir. 1996), *vacated and remanded on other grounds*, 522 U.S. 802 (1997).  The detainer informs the warden of the sending facility that another jurisdiction seeks to prosecute the inmate and, therefore, the sending facility should not release the inmate without first giving notice to the other prosecuting jurisdiction.  *Id.*

[2] A writ *ad prosequendum* is a writ used to bring a defendant in state custody before a federal court to face federal charges.  *United States v. Mauro*, 436 U.S. 340, 358 (1978).  When a prisoner is transferred pursuant to this type or writ, he is considered to be "on loan" to the United States so that the sending state's jurisdiction over the prisoner continues uninterrupted.  *Crawford v. Jackson*, 589 F.2d 693, 695 (D.C. Cir. 1978).

Marshal received Mr. Ward into custody on March 6, 2014, and he appeared before the Court for his Rule 5 hearing on March 11, 2014. Doc. 10 in Case No. 13-40066.

Subsequent developments in a related, pending case complicated Mr. Ward's prosecution. Following an August 22, 2014 motion hearing in Case No. 13-40060, this Court issued an Order suppressing certain wiretap evidence unless the government could produce evidence proving intercepted phone calls were made within the territorial jurisdiction of the judge who issued the wiretap authorizations. *See* Doc. 517 in Case No. 13-40060. Some of the evidence affected by the Court's suppression order affected Mr. Ward's case, and Mr. Ward moved to join the related suppression motions. Doc. 10 in Case No. 13-40066. The government believed it needed more time to marshal the phone location evidence needed to respond to the Court's suppression order. At a status conference held on September 15, 2014, the government informed Mr. Ward that it intended to dismiss the First Indictment to avoid a potential violation of the Speedy Trial Act. But the government also announced it planned to refile the indictment as soon as practical. Three days later, the government filed a motion to dismiss the first indictment (Doc. 41 in Case No. 13-40066) and the Court dismissed the First Indictment without prejudice later that same day. Doc. 43 in Case No. 13-40066. Mr. Ward was returned to KDOC custody five days later. The government filed the Second Indictment on November 12, 2014. Doc. 1 in Case No. 14-40139. On November 18, 2014, the same day Mr. Ward completed his state court sentence, he was arrested and returned to federal custody.

### B. The Interstate Agreement on Detainers Act

The IAD is a compact entered into by 48 States, the United States, and the District of Columbia. *New York v. Hill*, 528 U.S. 110, 111 (2000). The IAD reflects a legislative finding

that detainers based on untried indictments produce uncertainties that obstruct programs of prisoner treatment and rehabilitation.

> [A] prisoner who has had a detainer lodged against him is seriously disadvantaged by such action.  He is in custody and therefore in no position to seek witnesses or to preserve his defense.  He must often be kept in close custody and is ineligible for desirable work assignments.  What is more, when detainers are filed against a prisoner he sometimes loses interest in institutional opportunities because he must serve his sentence without knowing what additional sentences may lie before him, or when, if ever, he will be in a position to employ the education and skills he may be developing.

*United States v. Mauro*, 436 U.S. 340, 353 (1978) (quoting H.R. Rep. No. 91-1018, p. 3 (1970)) (further citations omitted).  The Act establishes procedures for a state to obtain temporary custody of a prisoner incarcerated in another jurisdiction for the purpose of bringing that prisoner to trial.  *Cuyler v. Adams*, 449 U.S. 433, 435 n.1 (1981).  A writ *ad prosequendum,* by itself, does not trigger IAD protections.  *Mauro*, 436 U.S. at 362.  But IAD protections do apply when the government uses a writ *ad prosequendum* in conjunction with a detainer to obtain custody of a state prisoner.  *Id.* at 362-63.  Here, the government lodged a detainer with KDOC before it obtained custody pursuant to the writ *ad prosequendum*.  *See* Doc. 6 in Case No. 13-40066; Doc. 13 at 1 in Case No. 14-40139.  Accordingly, the Court concludes—as the government concedes—Mr. Ward earned the benefit of IAD protections when he entered federal custody on March 6, 2014.  Doc. 43 at 18 in Case No. 14-40139.

### C.  Alleged Violations of the IAD

Once triggered, the IAD affords a range of protections to an inmate defendant.  Mr. Ward alleges the government violated three aspects of these protections.

First, the IAD imposes two trial clocks for inmate defendants.  The first trial clock (the "120-day clock") requires that trial commence "within one hundred and twenty days of the arrival of the prisoner in the receiving State."  18 U.S.C. App. 2 § 2, Art. IV(c).  The second trial

4

clock (the "180-day clock") provides that an inmate defendant "shall be brought to trial within one hundred and eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of . . . his request for a final disposition to be made of the indictment . . . ." *Id*. at § 2, Art. III(a).

In addition to these two trial clocks, the IAD also adopts what courts have called the "anti-shuttling rule." *See United States v. Taylor*, 173 F.3d 538, 540 (6th Cir. 1999). This rule prohibits a receiving state from returning an inmate to his original place of imprisonment before he is tried on the receiving state's indictment. 18 U.S.C. App. 2 § 2, Art. IV(e). The IAD treats the federal government as a "receiving state." *See Mauro*, 436 U.S. 340, 354, (1978) ("[T]he United States is a party to the [IAD] as both a sending and a receiving State"; the IAD "expressly includes the United States within the definition of 'State.'"). Here, Mr. Ward asserts that the government violated both IAD trial clocks. He also asserts that the government violated the anti-shuttling rule because it returned him to KDOC custody before it finally disposed of the First Indictment. The Court considers each of the alleged IAD violations below.

### 1. Mr. Ward Cannot Establish Violations of the IAD's Trial Clocks

The IAD's 120-day clock began to run when Mr. Ward arrived in federal custody on March 6, 2014. 18 U.S.C. App. 2 § 2, Art. IV(c). The IAD's 180-day clock began to run when the government received Mr. Ward's request for disposition of his detainer. *Id*. at § 2, Art. III(a). Mr. Ward's request for disposition of detainer is dated February 3, 2014. Doc. 13 at 1 in Case No. 14-40139. However, the 180-day clock did not begin to run until Mr. Ward's request for disposition of detainer actually was delivered to the government. *Fex v. Michigan*, 507 U.S. 43, 52 (1993) (holding that "the 180-day time period in Article III(a) of the IAD does not commence until the prisoner's request for final disposition of the charges against him has actually been

delivered to the court and prosecuting officer of the jurisdiction that lodged the detainer against him"). The Court cannot determine from the record when the government received Mr. Ward's request for disposition of detainer.[3] It is sufficient for the purposes of this motion, however, to assume that the government could not have received Mr. Ward's request before he made it on February 3, 2014. See Doc. 13 at 1 in Case No. 14-40139 (Mr. Ward's application for disposition of detainer dated February 3, 2014). If the Court counts every day that elapsed before Mr. Ward's March 6 arrival into federal custody, a minimum of 149 days would have remained on the 180-day clock when the 120-day clock began to run.[4] Thus, the 120-day clock is the more demanding trial clock in this case, so the Court needs only to decide whether the government has complied with the 120-day clock.

Mr. Ward asserts that the 120-day clock expired before the government moved to dismiss the First Indictment. He contends that seventy-seven nonexcludable days elapsed between March 6 and May 23, 2014, and that another eighty-seven nonexcludable days elapsed between June 23 and September 18, 2014. Doc. 12 at ¶¶ 6-7 in Case No. 14-40139. According to Mr. Ward's calculations, the IAD's 120-day trial clock expired on August 5, 2014.

At the hearing, Mr. Ward conceded that his calculations did not account for any excludable time except for one period between May 23 and June 23, which resulted from Mr. Ward's motion for a continuance. His omission of excludable time is a significant one. Article III and Article IV of the IAD provide that time is excludable from the 120-day and 180-day

---

[3] Mr. Ward appears to allege that the government received his request on or around February 18 because he claims that the 180-day trial clock expired on August 18, which is about 180 days after February 18.

[4] For simplicity, the Court's calculations in this section do not account for excludable time because doing so does not affect the Court's conclusion that the 120-day clock is the more demanding trial clock in this case.

6

speedy trial clock "for good cause shown." 18 U.S.C. App. 2 § 2, Arts. III(a), IV(c). Courts have construed the IAD's "good cause" provision to "encompass the same conditions and circumstances as the rules for excludable time under the speedy trial act[, 18 U.S.C. §§ 3161 *et seq.*]." *United States v. Cephas*, 937 F.2d 816, 819 (2d Cir. 1991); *see also United States v. Dawn*, 900 F.2d 1132, 1136 (7th Cir. 1990) (180-day period of Article III was "tolled during the pendency of [the defendant's] motion to dismiss"); *United States v. Taylor*, 861 F.2d 316, 321 (1st Cir. 1988) (under Article IV, "a defendant waives the 120-day limitation during the time it takes to resolve matters raised by him"); *United States v. Robinson*, 290 F. Supp. 2d 808, 817 (E.D. Mich. 2003) (collecting cases in accord).

The Court has conducted its own trial-clock calculations accounting for time excludable under the Speedy Trial Act. *See* 18 U.S.C. § 3161(h) (providing non-exhaustive list of excludable events). The Court's calculation reveals only sixty-six nonexcludable days have elapsed since Mr. Ward entered federal custody. And as of the date of this Order, the case remains in a window of excludable time because the Court has not finally resolved Mr. Ward's current motion. Because this case is still within both IAD trial clock limits, the Court finds Mr. Ward has failed to establish a violation of Articles III(a) or IV(c).

### 2. Mr. Ward has Established a Violation of the Anti-Shuttling Rule

Mr. Ward also asserts that the government has violated the anti-shuttling rule because it returned him to KDOC custody before trial or other final disposition of the First Indictment. The anti-shuttling rule, 18 U.S.C. App. 2 § 2, Art. IV(e), provides:

> If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to article V(e) hereof, such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

7

In this case, the provision required that Mr. Ward receive a trial on his pending federal indictment before he was returned to Kansas' custody. Naturally, the government concedes that Mr. Ward did not receive a trial before he was returned to KDOC custody; the government also concedes that it violated the anti-shuttling rule. *See* Doc. 13 in Case No. 14-40139. The Court agrees.

Having concluded that Mr. Ward has established a violation of the IAD's anti-shuttling rule, the Court must determine the appropriate remedy. Ordinarily, if the receiving state violates the anti-shuttling rule, the Court must dismiss the receiving state's indictment with prejudice. 18 U.S.C. App. 2 § 2, Art. IV(e) ("If trial is not had on any indictment . . . prior to the prisoner's being returned to the original place of imprisonment . . . the court shall enter an order dismissing the [indictment] *with prejudice*.") (emphasis added). However, when the United States is the receiving state, a federal district court has discretion to dismiss the affected indictment with or without prejudice. The Anti-Drug Abuse Act of 1988 (Pub. L. 91-538, § 9, as added Pub. L. 100-690, Title VII, § 7059, Nov. 18, 1988) amended the IAD to include the following provisions:

> § 9. Special provisions when United States is a receiving State
>
> Notwithstanding any provision of the agreement on detainers to the contrary, in a case in which the United States is a receiving State—
>
> 1) any order of a court dismissing any indictment, information, or complaint may be with or without prejudice. In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: The seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of the agreement on detainers and on the administration of justice; and
>
> 2) it shall not be a violation of the agreement on detainers if prior to trial the prisoner is returned to the custody of the sending State pursuant to an order

8

>of the appropriate court issued after reasonable notice to the prisoner and the United States and an opportunity for a hearing.

18 U.S.C. App. 2 § 9. Subsection (1) of § 9 is clear—the IAD does not mandate dismissal with prejudice when the United States is the receiving state. Instead, the Court must determine whether to dismiss the affected indictment with or without prejudice by considering the factors listed in § 9(1), *i.e.*: "[t]he seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of the agreement on detainers and on the administration of justice." *Id.*; *see also United States v. Martinez*, 376 F. Supp. 2d 1168, 1175-78 (D.N.M. 2004) (applying the § 9(1) factors). When the Court dismissed the First Indictment, it neglected to consider whether the § 9(1) factors favored dismissal with or without prejudice or dismissal, as the IAD requires. *See* Doc. 43 in Case No. 13-40066.

Section 9(2) creates additional leniency when the United States is the receiving state by carving an exception to the anti-shuttling rule. Section 9(2) provides that the United States does not violate the anti-shuttling provision if it returns a prisoner to the sending state before a trial on the federal indictment, so long as the prisoner is given reasonable notice and an opportunity for a hearing. In other words, the IAD does not prohibit the United States from shuttling an inmate back to state custody; it simply prohibits shuttling without giving the prisoner notice and an opportunity for a hearing. The right to a hearing on the terms of the dismissal of the First Indictment—not the right to be free from any shuttling—is a considerably more limited right than the IAD's general prohibition against shuttling. *Compare* 18 U.S.C. App. 2 § 2, Art. IV(e) *with* § 9(2). Nonetheless, the government violated this right by failing to ask the Court to conduct a hearing before returning Mr. Ward to KDOC custody. Consequently, the Court's remedy must address this violation.

### D.  The Court Must Hold a Hearing to Determine the Appropriate Relief

Mr. Ward was denied two rights granted under IAD:  (1) the right to right to a hearing before the government returned him to state custody; and (2) the right to have the Court determine whether to dismiss his First Indictment with or without prejudice based on the factors in 18 U.S.C. App. 2 § 9(1).  But blame for this oversight falls on both parties—on the government for not observing the IAD's requirements when it returned Mr. Ward to state custody; and on Mr. Ward for not timely asserting his IAD rights initially and when he sought reconsideration of the Court's Order.  Accordingly, the Court finds the following remedy fair and adequate:  the Court will vacate the portion of its September 18, 2014 Order Dismissing the First Indictment (Doc. 43) that designates the dismissal as one without prejudice, and set a hearing for the parties to present argument whether the § 9(1) factors favor dismissing the First Indictment with or without prejudice.  After considering the parties' argument, the Court will decide whether it should dismiss the First Indictment with or without prejudice.  The Court's ruling on that question will resolve the merits of Mr. Ward's current motions, and implementing this procedure will protect Mr. Ward's rights under the IAD adequately without punishing either party unduly.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Mr. Ward's Motions to Dismiss Indictment (Doc. 12 in Case No. 14-40139; Doc. 44 in Case No. 13-40066) are denied in part and taken under advisement in part.  The portion of the Court's Order Dismissing the First Indictment (Doc. 43 in Case No. 13-40066) designating the dismissal as one without prejudice is vacated.  The parties are directed to prepare argument about whether the factors in 18 U.S.C. App. 2 § 9(1) favor dismissing the First Indictment with or without prejudice.  The parties shall

present their argument to the Court at a hearing on January 6, 2015 at 1:30 P.M. in Courtroom 401.

**IT IS SO ORDERED.**

**Dated this 31st day of December, 2014, at Topeka, Kansas**

<u>s/ Daniel D. Crabtree</u>
**Daniel D. Crabtree**
**United States District Judge**

11