IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>v.<br><br>LAMONT ALFONZO WARD, JR.,<br><br>       Defendant. | Case Nos. 13-cr-40066-01-DDC,<br>                14-cr-40139-01-DDC |

## MEMORANDUM AND ORDER

This case again comes before the Court on defendant Lamont Ward, Jr.'s consolidated Motion to Dismiss Indictment (Doc. 44 in Case No. 13-40066; Doc. 12 in Case No. 14-40139).[1] After considering the arguments asserted in Mr. Ward's motion and the government's response (Doc. 23 in Case No. 14-40139), the Court concluded that Mr. Ward had established a violation of the anti-shuttling provision of the Interstate Agreement on Detainers Act's ("IAD"), 18 U.S.C. App. 2 § 2, Art. IV(e). Consistent with this decision, the Court issued an Order on December 31, 2014, vacating the portion of its Order dismissing Mr. Ward's First Indictment (Doc. 43 in Case No. 13-40066) that designated the dismissal as one without prejudice. The Court also ordered that it would take Mr. Ward's Motion to Dismiss Indictment under advisement pending a hearing on the related issue presented by that motion, *i.e.*, whether the IAD violation affecting the First Indictment requires the Court to dismiss that indictment with prejudice and, as a consequence,

---

[1] The complete procedural background leading to Mr. Ward's consolidated Motion to Dismiss Indictment is set forth in the Court's first Order addressing this motion (Doc. 50 in Case No. 13-40066; Doc. 25 in Case No. 14-40139).

1

also dismiss the Second Indictment. At hearings conducted on January 6 and April 17,[2] the parties argued the remaining question: whether the factors in 18 U.S.C. App. 2 § 9(1) favored dismissing the First Indictment with or without prejudice. After carefully considering the parties' arguments, the Court concludes that the § 9(1) factors favor dismissal of the First Indictment without prejudice and it thus denies Mr. Ward's consolidated Motion to Dismiss the current indictment.

### A. Analysis

Mr. Ward asserted two principal arguments at the hearing: (1) the Court should not analyze the § 9(1) factors retroactively because doing so would prejudice Mr. Ward; and (2) if the Court does address the § 9(1) now, the factors favor dismissing the First Indictment with prejudice. The Court addresses each of Mr. Ward's arguments, in turn, below:

#### 1. May the Court Revisit the § 9(1) Factors?

Generally, the IAD imposes harsh sanctions on a receiving state who violates one of its provisions. *See, e.g.*, 18 U.S.C. App. 2 § 2, Arts. IV(e) (mandating dismissal with prejudice for violating the anti-shuttling rule), V(c) (mandating dismissal with prejudice for violating the IAD's trial clocks). But when the United States is the receiving state, a federal district court has discretion to dismiss the affected indictment with or without prejudice. The Anti-Drug Abuse Act of 1988 (Pub. L. 91-538, § 9, as added Pub. L. 100-690, Title VII, § 7059, Nov. 18, 1988) amended the IAD to include the following provisions:

§ 9. Special provisions when United States is a receiving State

---

[2] On January 12, 2015, Mr. Ward's previous counsel filed a motion to withdraw (Doc. 27), asserting that her relationship with Mr. Ward had deteriorated to an extent precluding effective representation. The Court granted the motion to withdraw (Doc. 32). Mr. Ward's new attorney informed the Court that he would like to present supplemental argument on the pending IAD issue. The Court agreed that this would be appropriate. Mr. Ward submitted supplemental briefing (Doc. 38) and presented additional argument at a hearing conducted on April 17, 2015.

> Notwithstanding any provision of the agreement on detainers to the contrary, in a case in which the United States is a receiving State—
>
> 1) any order of a court dismissing any indictment, information, or complaint may be with or without prejudice. In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: The seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of the agreement on detainers and on the administration of justice; and
>
> 2) it shall not be a violation of the agreement on detainers if prior to trial the prisoner is returned to the custody of the sending State pursuant to an order of the appropriate court issued after reasonable notice to the prisoner and the United States and an opportunity for a hearing.

18 U.S.C. App. 2 § 9.

Subsection (1) of § 9 is this clear—when the United States is the receiving state, the IAD does not mandate dismissal with prejudice. Instead, the Court must determine whether to dismiss the affected indictment with or without prejudice by considering the factors specified in § 9(1). Those factors are: "[t]he seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of the agreement on detainers and on the administration of justice." *Id.*; *see also United States v. Martinez*, 376 F. Supp. 2d 1168, 1175-78 (D.N.M. 2004) (applying the § 9(1) factors).

When the Court dismissed the First Indictment, it did not conduct the analysis required by § 9(1). At that time, neither the government nor Mr. Ward noticed this oversight or raised the issue. While noting the shared blame for failing to raise this issue, the Court nonetheless concluded that Mr. Ward's IAD rights were violated when the Court dismissed his First Indictment without conducting a § 9(1) analysis. But the Court has concluded that this violation did not require the drastic remedy of dismissal. Instead, the Court simply revisited its Order dismissing the First Indictment without prejudice, and provided Mr. Ward an opportunity to argue why the § 9(1) factors favored dismissal with prejudice. After considering the parties'

3

arguments on this subject, the Court then would decide whether to dismiss the First Indictment with or without prejudice.  The Court already has concluded that this remedy will protect Mr. Ward's rights under the IAD adequately without punishing either party unfairly.

Mr. Ward's first argument challenges the Court's conclusion that it can protect his rights by conducting a § 9(1) analysis now.  His sole support for this argument is a narrow theory of prejudice that assumes the following:  Had the Court conducted a hearing before dismissing the First Indictment, it would have expressed the inclination to dismiss with prejudice, and, in response, the government would have withdrawn its Motion to Dismiss Indictment.  In this hypothesized circumstance, Mr. Ward asserts he could have pursued one of two options.  He either could have demanded a speedy trial and argued that the government cannot admit wiretap evidence at that trial because it lacked the necessary location data.  Alternatively, if the Court decided to continue the trial until it could resolve the Motion to Suppress Wiretap Evidence finally (Doc. 37 in Case No. 13-40066), Mr. Ward could have withdrawn his motion, and thereby reactivated his speedy-trial clock.  This situation, Mr. Ward theorizes, would have forced the government to prosecute him before it could process key evidence.  According to Mr. Ward, because the government never faced the risk of dismissal with prejudice that would have arisen under the circumstances he hypothesizes, the government was able dismiss the indictment, gather crucial cellular location evidence, and reindict Mr. Ward.  Thus, Mr. Ward contends, the Court cannot remedy the IAD violation by revisiting the factors now because it cannot undo the tactical advantage the government has acquired in the meantime.

But regardless of its merits, Mr. Ward's prejudice theory is moot because the Court concludes that if it had conducted a hearing before dismissing the First Indictment, it would have dismissed without prejudice.  Notably, Mr. Ward does not argue that anything prevents the Court

from analyzing the § 9(1) factors as they existed September 18, 2014. Consequently, the Court has conducted that analysis and, for the reasons explained below, concludes that the § 9(1) factors—as the circumstances they deem relevant existed on September 18, 2014—favor dismissing the First Indictment without prejudice.

### 2. Analysis of § 9(1) Factors

Title 18 U.S.C. App. 2 § 9(1) directs a federal Court dismissing an indictment against a prisoner covered by the IAD to determine whether to dismiss with or without prejudice by considering each of the following factors: "[t]he seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of the agreement on detainers and on the administration of justice." *Id.* Because the Court should have conducted that analysis before dismissing the First Indictment, the Court considers the circumstances influencing each factor as they existed on September 18, 2014.

#### a. Seriousness of the Offense

The First Indictment charges Mr. Ward with being a felon in possession of a firearm, possessing crack cocaine with intent to distribute it, and possessing a firearm in furtherance of drug trafficking. Doc. 1 in Case No. 13-40066. "Section 9 of the IAD[] contains no criterion for assessing seriousness, but the plain meaning suggests that the court should examine the nature of the conduct and the potential sentence." *Munez v. United States*, No. CIV. 09-3860 JBS, 2011 WL 221655, at *4 (D.N.J. Jan. 20, 2011) *aff'd*, 462 F. App'x 172 (3d Cir. 2011) (citing *United States v. Pope*, 183 F. Supp. 2d 773 (D. Md. 2001); *United States v. Allen*, 80 F. Supp. 2d 472, 474-75 (E.D. Pa. 2000)).

Our Circuit recognizes a felon in possession of a firearm is a serious offense. *United States v. Williams*, 576 F.3d 1149, 1158 (10th Cir. 2009) (felon in possession is a serious offense

for purpose of determining whether violation of Speedy Trial Act warrants dismissal with prejudice); *cf. United States v. Kurt*, 945 F.2d 248, 251-52 (9th Cir. 1991) (noting "the similarity of the factors found in Section 9(1) to those governing dismissal under the Speedy Trial Act"). The same is true for narcotics trafficking. *United States v. Toombs*, 713 F.3d 1273, 1280 (10th Cir. 2013) (noting that the Tenth Circuit has deemed narcotics trafficking a serious offense). Although the government only alleges that Mr. Ward possessed a relatively small quantity of cocaine, his possession of a firearm in connection with narcotics distribution increases the seriousness of the crime. *See* 18 U.S.C. § 924(c) (imposing a five-year minimum sentence for possessing a firearm in furtherance of drug trafficking, a term to be served consecutive to the underlying drug offense).

A defendant's criminal history also can elevate the seriousness of a felon in possession charge. *Martinez*, 376 F. Supp. 2d at 1175. Mr. Ward's record includes a felony aggravated battery conviction for attacking and severely beating a man in a gas station parking lot. Moreover, Mr. Ward was on supervised release when he allegedly committed the offenses resulting in his current federal indictment. In light of the nature of Mr. Ward's alleged conduct, the punishment imposed for the charged offenses, and Mr. Ward's prior criminal history, the Court concludes this factors favors dismissal without prejudice.

### b. Facts and Circumstances Leading to Dismissal

Next, the Court must examine the facts and circumstances leading to the dismissal of the First Indictment. 18 U.S.C. App. 2 § 9(1). The Court summarized the surrounding circumstances in its first Order addressing Mr. Ward's motion:

> Subsequent developments in a related, pending case complicated Mr. Ward's prosecution. Following an August 22, 2014 motion hearing in Case No. 13-40060, this Court issued an Order suppressing certain wiretap evidence unless the government could produce evidence proving intercepted phone calls were made

> within the territorial jurisdiction of the judge who issued the wiretap authorizations.  *See* Doc. 517 in Case No. 13-40060.  Some of the evidence affected by the Court's suppression order affected Mr. Ward's case, and Mr. Ward moved to join the related suppression motions.  Doc. 10 in Case No. 13-40066.  The government believed it needed more time to marshal the phone location evidence needed to respond to the Court's suppression order.  At a status conference held on September 15, 2014, the government informed Mr. Ward that it intended to dismiss the First Indictment to avoid a potential violation of the Speedy Trial Act.  But the government also announced it planned to refile the indictment as soon as practical.  Three days later, the government filed a motion to dismiss the First Indictment (Doc. 41 in Case No. 13-40066) and the Court dismissed the First Indictment without prejudice later that same day.

Doc. 50 in Case No. 13-4066; Doc. 25 in Case No. 14-40139.

When reviewing the facts and circumstances leading to dismissal of the First Indictment, the Court should evaluate:  (1) whether the government acted in good faith; (2) whether the violation was intentional; and (3) whether the violation was egregious.  *See Martinez*, 376 F. Supp. 2d at 1176.  Here, the government explicitly acknowledged its intention to dismiss the charges and reindict Mr. Ward as soon as practicable so it would avoid problems under the Speedy Trial Act.  At that time, the Court—also overlooking the IAD—informed the defendant that Rule 48 of the Federal Rules of Criminal Procedure empowered the government to dismiss a case.  The government utilized the authority conferred by Rule 48 and, in fact, reindicted him promptly, less than two months after it moved to dismiss the First Indictment.

In his supplemental briefing, Mr. Ward argues that that the government's dismissal to avoid a speedy trial violation is tantamount to an intentional violation of the IAD.  Doc. 38 at 2.  This argument ignores the three-part standard identified in *Martinez* and by doing so, invites the Court to replace it with a one-part standard more favorable to Mr. Ward.  The Court declines this invitation and returns, instead, to the three factors adopted in *Martinez*.

First, when it dismissed the First Indictment and shuttled Mr. Ward back to state custody, did the government act in good faith?  The answer to this question is a mixed one.  On one hand,

7

the government concedes it did so to manage problems under the Speedy Trial Act and the latent problems of proof arising from the suppression order in *Banks*. But conversely, the government merely availed itself of a right conferred on it by Fed. R. Crim. P. 48—the right to dismiss without prejudice.

Next, *Martinez* asks whether the violation of the IAD was intentional. 376. F. Supp. 2d at 1176. Mr. Ward argues that it was because the government intentionally dismissed the First Indictment. The argument answers the wrong question. This factor from *Martinez* asks, instead, whether the *violation* was intentional. The government asserts that it dismissed the First Indictment and returned Mr. Ward to state custody without realizing that doing so would violate the IAD. Mr. Ward has not presented contrary evidence and the Court thus concludes that the violation of the IAD was not an intentional one.

Last, the *Martinez* standard asks whether the violation of the IAD was egregious. *Id.* It was not. The government's dismissal returned Mr. Ward to state custody where he finished serving a state court sentence he was obliged to serve anwyay. Mr. Ward concedes the State of Kansas gave him day-for-day credit for the time he spent in federal custody. These circumstances do not amount to an egregious violation of the IAD.

In sum, two of the three factors favor dismissal without prejudice. The third factor yields mixed results. These circumstances are far less forceful than those that have lead courts to dismiss with prejudice under the IAD. *See, e.g*. *States v. Pope*, 183 F. Supp. 2d 773, 777-78 (D. Md. 2001) (dismissing with prejudice where IAD violation was not an isolated incident but instead resulted from systemic deficiencies in procedures used by the United States Marshal Service and state officials); *United States v. Zfaty*, 44 F. Supp. 2d 588, 592 (S.D.N.Y. 1999) (dismissing with prejudice where the government detained defendant on a minor charge for

nearly twice the permissible 180-day period). Accordingly, the Court concludes that the facts and circumstances favor a dismissal without prejudice.

### c. Impact of Prosecution on the Administration of the IAD and of Justice

Last, the Court must consider the effect a reproseuction would have on the administration of the IAD and on the administration of justice. 18 U.S.C. App. 2 § 9(1). Congress enacted the IAD after finding that detainers based on untried indictments produced uncertainties obstructing programs of prisoner treatment and rehabilitation. *United States v. Mauro*, 436 U.S. 340, 353 (1978) (citations omitted). When analyzing this factor, the Court primarily must consider whether the IAD violation prejudiced the defendant. *Pope*, 183 F. Supp. 2d at 778. After reviewing the circumstances attendant to dismissal of the First Indictment, the Court concludes that Mr. Ward was not prejudiced in any fashion that compromises the IAD's administration.

Mr. Ward argues that he was deprived of access to certain programs at the state prison because of the government's anti-shuttling violation. Specifically, he argues that the violation prevented him from taking a critical thinking course offered through the Kansas Department of Corrections. The Court finds Mr. Ward's argument unpersuasive.

The government's anti-shuttling violation did not cause Mr. Ward to lose any opportunities at the state prison. Mr. Ward's period of federal detention, from March 6, 2014 to September 23, 2014, occurred because the United States charged him under a federal indictment, and because he filed a request for disposition of his detainer. *See* Doc. 13 at 1 in Case No. 14-40139. Mr. Ward's demand asked the government either to drop his detainer or transfer him from state prison to stand trial on the federal indictment. *Id.* Thus, Mr. Ward's own request prevented him from taking advantage of institutional opportunities at the state correctional

facility, not the government's anti-shuttling violation.[3]  It was Mr. Ward's right to request disposition of his detainer, but the consequences of this request do not amount to prejudice under the IAD.

Mr. Ward agrees that the State of Kansas gave him day-for-day credit on his state court sentence for the time he spent in federal custody.  When the Court dismissed the First Indictment, Mr. Ward had just two months remaining on his state court sentence.  The government did not return him to federal custody until his state court sentence ended.  *Martinez*, 376 F. Supp. 2d 1168, 1176 (finding that reprosecution after the conclusion of a state sentence does not affect the administration of the IAD adversely).  Under this third factor, Mr. Ward's argument must show prejudice resulting from his return to state custody to serve the final two months of a lawfully imposed state court sentence—a sentence he was required to serve anyway.  He has failed to identify any such prejudice, and the Court finds that Mr. Ward has failed to show that the violation deprived him of any institutional opportunities or otherwise prejudiced him.  The Court thus concludes that neither the anti-shuttling violation nor a reprosecution would affect the administration of the IAD adversely.

To the contrary, the Court finds that the interests of justice strongly favor a reprosecution. The government has charged Mr. Ward with serious felony offenses and Mr. Ward has a criminal history that includes a violent felony conviction.  Moreover, he is a repeat offender, committing the presently charged offenses while on probation for his aggravated battery

---

[3] At the April 17 hearing, Mr. Ward introduced a document (Def.'s Ex. 1-IAD) purporting to establish that he lost "good-time credit" for his Kansas sentence as a result of his return to federal custody.  Although not entirely clear from the document, the government noted that the 21-day reduction in good-time credit resulted from a disciplinary conviction, which occurred on the same day that he committed an assault at the correctional facility.  The Court views the government's explanation as the more persuasive one.  Mr. Ward's exhibit suggests that his reduction in good time credit likely resulted from his own conduct.  The Court thus declines to view this document as evidence of prejudice caused by the anti-shuttling violation.

conviction. The interests of justice, therefore, favor resolving his criminal charges on their merits instead of dismissing them because of a procedural violation. *Martinez*, 376 F. Supp. 2d at 1176 (finding that the interest of justice favors reprosecution where the offenses charged are serious and defendant has engaged in repeated criminal conduct).

### B. Conclusion

The government committed an IAD violation when it returned Mr. Ward to state custody before trial or final disposition of the First Indictment. Mr. Ward was entitled to a hearing and to have the Court consider whether it should have dismissed the First Indictment with or without prejudice in accordance with the § 9(1) factors. The Court did not conduct a hearing and it should have done so. Nevertheless, this IAD violation was a harmless error because the Court now concludes—as it would have concluded on September 18, 2014—that the § 9(1) factors favor dismissal without prejudice of the First Indictment.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Mr. Ward's consolidated Motion to Dismiss Indictment (Doc. 44 in Case No. 13-40066; Doc. 12 in Case No. 14-40139) is denied.

**IT IS SO ORDERED.**

**Dated this 29th day of April, 2015, at Topeka, Kansas.**

                                          **s/ Daniel D. Crabtree**
                                          **Daniel D. Crabtree**
                                          **United States District Judge**